## Raab's Estate.

*Practice, O. C.—Correcting mistake in former adjudication.*

1. Where no rights have changed in consequence of an erroneous decree, it is within the power of the Orphans' Court to correct the record and make a distribution that will be just and right.

*Legacies for particular purpose.*

2. Where a testator made a bequest in the following language: "I say that my executor shall pay to Leroy Raab one thousand dollars to educate him for the priesthood," the words "to educate him for the priesthood" are not a condition or limitation, but merely explanatory of the bequest, and the legatee takes the bequest forthwith without regard to the application which he may make of it.

Audit of account. O. C. Berks Co., May T., 1922, No. 35.

*J. Howard Jacobs,* for accountant.

*Snyder, Zieber & Snyder,* for Charles Leroy Raab.

SCHAEFFER, P. J., Dec. 2, 1922.—The decedent died on May 21, 1911, testate. By his last will and testament he disposed of that part of his estate embraced in the account as hereinafter appears. The account contains principal and income. Of principal, the balance for distribution is shown to be $967.59, and of income, $358.94. The distribution of these funds is in dispute.

The funds represent a legacy of $1000 and accrued interest, which George J. Raab, the testator, in a codicil to his will, disposed in the following language: "I say that my executor shall pay to Leroy Raab one thousand dollars to educate him for the priesthood."

In the adjudication filed June 15, 1915, upon the final account in the estate of decedent, we distributed "to The Pennsylvania Trust Company, trustee of Leroy Raab, to be expended in his education for the priesthood," the said legacy, with interest, amounting to $1184. On June 12, 1915, on petition of the guardian of Leroy Raab, the court appointed The Pennsylvania Trust Company as trustee to receive the fund about to be distributed to them, by making the following order: "And now, to wit, June 12, . . . the court appoints The Pennsylvania Trust Company trustee to receive the $1000, or so much thereof as may be distributed to Leroy Raab, and pay the same to the guardian of Leroy Raab, or make such other distribution of said money as may be in compliance with the last will and codicil thereto of the late George J. Raab, deceased."

The Pennsylvania Trust Company, trustee, now brings this fund into court and asks that it be distributed to the parties legally entitled thereto, because Leroy Raab, having decided not to enter the priesthood, does not propose to be educated for that calling.

Therefore, the question arises whether this legacy is payable to Leroy Raab or to the next of kin of the testator. Counsel for the next of kin contends that, having been distributed to the accounting trustee to be expended in the

3 D. & C.

education of Leroy Raab for the priesthood, and the latter having declared that he would not enter the priesthood, the legacy must be given to them, because the court, in its distribution, restricted its use to Leroy's education as a priest; and, therefore, the question of the ownership of the fund, so far as Leroy Raab is concerned, is *res adjudicata*. In other words, the position of the next of kin is that Leroy Raab's rights and interest in the legacy were determined in the adjudication, and that he is now estopped from asserting absolute ownership of the fund.

In support of this contention, counsel for the heirs has cited to us Gould's Estate, 270 Pa. 535, where it was held that the construction of a will adopted by an auditing judge in the distribution of an estate becomes "the law of the case," and will control subsequent distributions arising from the same fund or parts of the fund affected by the former adjudication, and that particularly is this true where the fund is turned over to trustees for the purpose of the will as construed by the court. An examination of that case shows that the fund in question had been adjudicated in 1877, and not until after a period of forty years, during which the parties interested had acted in accordance with said adjudication, was an effort made to challenge the correctness of the decree.

In the case at bar, the fund merely remains undisturbed, no one having acted under the decree distributing it for the education of Leroy Raab, and, therefore, no harm will result to any one from our consideration now of the rights of Leroy Raab in the legacy. It must be remembered that when, at the request of the guardian, the fund was inadvertently distributed to a trustee, Leroy Raab himself was only fourteen years of age, and it was then impossible to determine finally whether or not he would prepare for the priesthood. Moreover, the question of ownership of the fund was not raised on the adjudication, the distribution being merely to the trustee to be expended for Leroy's education—an apparently unnecessary proceeding, since the executor is directed "to pay to Leroy Raab"—a direction that can hardly be said to create a trust. But, by reason of this inadvertence, we are now asked to ignore Leroy's rights and to say that those rights have been adjudicated and fixed by the distribuiton to the trustee. The adoption of this view, it seems to us, would result in grave injustice to Leroy, and would not be in harmony with the duty of a court under facts and circumstances such as we have here.

No rights have changed in consequence of the decree distributing to the trustee for the education of Leroy Raab, and it is, therefore, within the power of the court to correct the record and make a distribution that will be just and right. That the Orphans' Court has power under its inherent authority to correct erroneous decrees is a well settled rule, which has just lately been reaffirmed in Chappell's Estate, 264 Pa. 486, where Mr. Justice Kephart said: "The court may correct its records in the interest of justice, even to protect parties from their own mistakes and blunders; and where no rights have changed in consequence of the decree, this power of correction will be liberally exercised: Sloan's Estate, 254 Pa. 346, 350." Moreover, the very fact that the fund is now here for distribution shows that it was not finally distributed before, and it naturally follows that we have the power to determine every question incident to a proper distribution at this time.

Therefore, we come to the question whether or not Leroy Raab is entitled to this legacy of $1000, with interest, without studying for the priesthood. Are the words "to educate him for the priesthood," used in this bequest, merely explanatory of the bequest, or do they express a condition or limitation

Raab's Estate.

without the happening of which no estate passed to him? In order to give this language the effect which the next of kin claim for it, the words "to educate him for the priesthood" must be regarded a condition or limitation. Conditions and limitations are generally expressed by using appropriate words, as "on condition that," or "provided that," and "until a certain time," or "so long as:" McCalla's Estate, 16 Pa. Superior Ct. 202, 206. We find here no such indices of intention to limit this bequest, and as estates upon condition and upon limitation, which are in derogation of vested estates and interests, are to be construed strictly and are never to be held as such, except where the intent to create them is clearly expressed, we cannot see how the language of this bequest can be construed as meaning anything more than expressive of a desire or purpose on the part of testator that Leroy Raab should become a priest. There is nothing in the whole will to show that this bequest should be withheld from Leroy Raab in case of his refusal to enter the priesthood; and since there is no limitation over or condition of any kind attached to it, it must be construed as having been given for a particular purpose and vests in him, even though he fails to use it for said purpose.

In Beck's Appeal, 46 Pa. 527, where a sum of money was directed to be paid to the widow for "house rent" in addition to a yearly annuity, and it appeared that she ceased to be a housekeeper, it was held that the widow was entitled to the annuity for the "house rent," though she did not keep house and was not obliged to pay rent. In that case the court says: "So when the words are too indefinite to create a trust, the absolute property is vested in the legatee. So in cases where the words are added, expressing a purpose for which the gift is made, and where the purpose of the gift is for the benefit solely of the donee himself, he can claim the gift without applying it to the purpose, and that whether the purpose be in terms obligatory or not. Thus, if a sum of money be bequeathed to purchase for any person a ring, or an annuity, or a house, or to set him up in business, or for his maintenance and education, or to bind him apprentice, or towards the printing of a book, the profits of which are to be for his benefit, the legatee may claim the money without applying it or binding himself to apply it to the specified purpose, and this even in spite of an express declaration by the testator that he shall not be permitted to receive the money: 1 Jarman on Wills (3rd ed., 1861), 367." The principle laid down in that case was recently recognized in McCalla's Estate, 16 Pa. Superior Ct. 202, where a property was left "for a home" to a husband and wife and they did not see fit to occupy it. It was held, in an interesting and exhaustive opinion by the court below, that the words "for a home" were expressive of a purpose for which testatrix recommended the property to be used, or as explanatory of her bounty, and that they did not amount to limitation and defeat the devise or prevent it from vesting in the legatees.

In Keen's Estate, 1 Dist. R. 166, the testator directed his executors to pay to his daughter in cash her share of the residue, when she requested it, "to purchase a homestead or to aid her husband in business," and it appeared that the husband died during the lifetime of the testator, and that the daughter had not remarried, it was held that the bequest was absolute.

The cases that we have briefly referred to all hold that a legacy given absolutely, but for a particular purpose, is payable forthwith, without regard to the application which the legatee may make of it.

The gift to Leroy Raab "to educate him for the priesthood" is an absolute one, and the fund in question will, therefore, be distributed to him.

From Wellington M. Bertolet, Reading, Pa.